The CHAPMAN CHILDREN'S TRUST
and the Cole Children's Trust,
Appellants,

v.

PORTER & HEDGES, L.L.P. and
David L. Burgert, Appellees.

No. 14–99–01181–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 2, 2000.

Douglas J. Sutter, Houston, for appellants.

Sam W. Cruise, Jr., Houston, for appellees.

Panel consists of Justices YATES, FOWLER and EDELMAN.

## OPINION

LESLIE BROCK YATES, Justice.

Appellants, the Chapman Children's Trust and the Cole Children's Trust (the "Trusts"), sued appellees, the law firm of Porter & Hedges, L.L.P. and one of its attorneys, David L. Burgert (collectively, "Porter & Hedges"), for breach of contractual, fiduciary, and other common law duties. The trial court entered summary judgment in favor of appellees. On appeal, the Trusts argue that the trial court erred by granting summary judgment for the following reasons: (1) appellees' summary judgment affidavits have both substantive and formal defects; (2) appellees failed to conclusively establish all of their affirmative defenses or conclusively negate

all of the Trusts' claims; and (3) genuine issues of material fact remain. We affirm.

## Background and Procedural History

This case concerns allegations of "wrongful conduct" in connection with Porter & Hedges's efforts to disburse funds to the Trusts under the terms of a settlement agreement. In 1992, the Trusts filed suit against Barry Martin Atkins for payment of certain notes he had personally guaranteed. In 1994, the Trusts agreed to settle their claims against Atkins in exchange for certain "net proceeds" obtained from a separate suit that Atkins had filed against Motorola.[1] The settlement agreement provided that these net proceeds were to be "paid directly" by Atkins's attorneys, then Michael D. Sydow of Reynolds & Sydow and Jim E. Lavine of Zimmerman & Lavine, to Texas Commerce Bank as the designated "independent escrow agent," within seven (7) business days of receiving the settlement funds from Motorola. Before sending the funds to the escrow agent, however, Atkins's attorneys were authorized to subtract "those amounts properly deductible" from the settlement or judgment amount for attorneys' fees, costs, and litigation expenses, to arrive at the net amount contemplated by the settlement agreement. After the settlement agreement was executed, Burgert, of Porter & Hedges, replaced Sydow as one of Atkins's attorneys and acknowledged, in writing, his co-responsibility for the "proper distribution" of the net proceeds to the Trusts.

In early 1997, Atkins agreed to accept a confidential, multi-million dollar settlement from Motorola. In anticipation of the formal settlement agreement with Motorola, the Trusts lodged objections to certain litigation expenses that Atkins and his attorneys proposed deducting from the gross proceeds. The Trusts contacted Atkins's attorneys and requested supporting documentation for these proposed deductions but were given only an itemized expense log. After receiving no favorable response to their repeated requests, the Trusts insisted that no distribution be made until the dispute relating to the calculation of net proceeds was resolved.

On January 31, 1997, the Trusts intervened in the Motorola suit and filed a motion asking the court to freeze any settlement funds. On February 5, 1997, Atkins entered into a formal settlement agreement with Motorola. Motorola funded the settlement on February 6, 1997, and the gross proceeds were placed in Porter & Hedges's trust account. On February 12, 1997, the trial court in the Motorola case granted the Trusts' request for a temporary restraining order and froze Porter & Hedges's trust account in the amount the Trusts claimed was due, $1,895,925.00. The trial court further ordered the parties to mediate the dispute over the proper amount of net proceeds. At the mediation, the Trusts agreed to settle the dispute and to accept $1,510,000.00 as payment of the net proceeds, which amount was promptly paid out of Porter & Hedges's trust account.

Following the mediated settlement, the Trusts filed suit against Atkins's attorneys for breach of contractual, fiduciary, and other common law duties.[2] All of the Trusts' claims are based on allegedly wrongful acts committed in the course of distributing the net proceeds due the

---

1. According to paragraph 4 of the Trusts' settlement agreement with Atkins, "net proceeds" is defined as:

 [T]he sum of any amounts paid in partial or full settlement or in partial or full satisfaction of any judgment in [the Motorola suit] after deducting forty percent (40%) of that sum as Atkins' [sic] attorneys' fees, and after deducting all out of pocket costs and expenses incurred by Atkins in the prosecution or defense

of [the Motorola suit] and after deducting all amounts paid, if any, by Atkins, individually, in settlement of the IRS payroll tax claim pending against Atkins individually....

2. The Trusts subsequently settled with Jim Lavine and the firm of Zimmerman & Lavine. Therefore, this appeal involves only David Burgert and Porter & Hedges.

Trusts. Specifically, the Trusts complain that, "[b]ut for the wrongful conduct and breach of contractual, fiduciary and other common law duties of [Porter & Hedges], [the Trusts] would not have had to take legal action to protect their interests and thus, would not have been forced to incur a substantial amount of attorney fees, costs and expenses in doing so." The Trusts claim further that, during the course of such legal action, they were "ordered to mediation and were forced to take whatever sum of money they could obtain without provision of a proper accounting by [Porter & Hedges] and without knowing the exact amount of money owed to them under the various agreements at issue." The Trusts contend that, "[i]nstead of properly acting as fiduciaries, stakeholders, and/or trustees, and complying with their duties as fiduciaries, stakeholders, and/or trustees, and their contractual and common law duties and obligations, [Porter & Hedges] zealously represented the interests of Atkins and themselves to the detriment of [the Trusts]." The Trusts insist that these acts and omissions give rise to the following claims: (1) breach of fiduciary duty; (2) breach of contract; (3) negligence; (4) gross negligence; (5) reckless misconduct; (6) common law and statutory fraud; (7) civil conspiracy; (8) "[i]ntentional acts committed to harm" the Trusts; (9) "breach of duty as an escrow agent"; (10) "breach of duty as a stakeholder"; and (11) "breach of duty as a. trustee." The Trusts seek as damages the difference between what they claim they were entitled to under the original settlement agreement with Atkins ($1,895,925.00) and the amount that they settled for in mediation ($1,510,-000.00). The Trusts further seek to recover their attorneys' fees, costs, and expenses incurred in instituting legal action to protect their interests.

In response to the Trusts' claims, Porter & Hedges filed a motion for summary judgment that was accompanied by affidavits from Burgert and Lavine. Porter & Hedges argued that the Trusts' claims are barred by the "one satisfaction rule" and that, by agreeing to settle, the Trusts waived their claims or are estopped to complain further. Porter & Hedges added that any alleged wrongful conduct on its part was excused by the Trusts' own actions. Porter & Hedges also argued that any obligations owed the Trusts were eliminated when the parties amended the settlement agreement following mediation. Porter & Hedges argued further that the Trusts' claims fail, as a matter of law, because Porter & Hedges never represented the Trusts and therefore owed them no duty. In addition, Porter & Hedges maintained that the Trusts have no cause of action under any theory for actions taken solely in the course of representing its client, i.e., Atkins. Finally, Porter & Hedges asserted that the Trusts' claim that they settled in mediation under pressure or duress also fails as a matter of law. Ultimately, the trial court granted Porter & Hedges's motion for summary judgment without stating the grounds for its ruling.

### Standard of Review: Summary Judgment

Here, Porter & Hedges filed its motion for summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. The standard for reviewing motions filed under this rule "is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999) (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991) and *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985)). Under that traditional standard, this Court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor as well. *See KPMG*, 988 S.W.2d at 748; *Nixon*, 690 S.W.2d at 548–49.

■ When a defendant moves for summary judgment on an affirmative defense, it must conclusively prove all the essential elements of its defense as a matter of law, leaving no issues of material fact. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Fernandez v. Memorial Healthcare Sys. Inc.,* 896 S.W.2d 227, 230 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Where, as here, the trial court does not specify the grounds for its granting of a movant's motion for summary judgment, we may affirm the judgment if any of the grounds advanced within the motion are meritorious. *See Cincinnati Life Ins. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

## Objections to Summary Judgment Affidavits

In a sub-part of their first point of error, the Trusts complain that the trial court erred in granting summary judgment in favor of Porter & Hedges because the affidavits filed in support of the defendants' motion for summary judgment contained "improper conclusions and unsubstantiated opinions" and were therefore "substantively defective." In their second point of error, the Trusts allege further that the affidavits filed in support of Porter & Hedges's motion for summary judgment were defective as a matter of "form" for the following reasons: (1) they were based on hearsay; (2) they failed to "properly prove-up or authenticate the documents attached to the affidavits"; and (3) the affidavit filed by Burgert lacked a showing that he had "personal knowledge." The appellate brief filed by the Trusts does not set out which portions of the affidavits are objectionable; nor does it contain authority in support of those objections. Instead, the Trusts merely point to the record, contending that "[a] cursory review of the affidavits show [sic] that these objections were valid and should have been sustained." In response, Porter & Hedges contends that, by failing to fully brief this issue, the Trusts have waived appellate review.

■ Under Rule 38.1(h) of the Texas Rules of Appellate Procedure, every appellant's brief must contain a clear, concise argument in support of its contentions, including appropriate citations to authorities and to the record. *See* Tex.R.App.P. 38.1(h); *Casteel Diebolt v. Diebolt,* 912 S.W.2d 302, 304–05 (Tex.App.—Houston [14th Dist.] 1995, no writ). By raising an issue and failing to present any argument or authority on that issue, the party waives a review of that issue. *See Patton v. Saint Joseph's Hosp.,* 887 S.W.2d 233, 246 (Tex.App.—Fort Worth 1994, writ denied). Because the Trusts' brief contains no argument or authority in support of its objections, they have waived the right to complain about these issues on appeal.[3]

■ Moreover, we find that the Trusts failed to preserve error on their objections to the form of the affidavits filed by Porter & Hedges. It is well settled that a party must obtain a ruling on an objection as to defects of an affidavit's form or else the objection is waived. *See McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 343 n. 7 (Tex.1993); *Green v. Indus. Specialty Contractors, Inc.,* 1 S.W.3d 126, 130 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Here, the Trusts concede that, despite repeated efforts to do so, they were unable to obtain a written ruling on their formal objections from the trial court. After the summary judgment was granted, the Trusts scheduled a hearing on

---

3. In any event, a review of the affidavits filed by Porter & Hedges shows that the Trusts' substantive objections are without merit. Contrary to the Trusts' assertion, we find that the affidavits are not conclusory or unsubstantiated. Each affidavit was based on the personal knowledge of the affiant derived from his representation of Atkins during the suit involving Motorola. Moreover, the affidavits provided the underlying factual basis for their statements. *See id.* (citing *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.—Houston [1st Dist.] 1997, no writ)). Because the affidavits are not conclusory, the Trusts' substantive objections lack merit.

their objections. At that March 2, 1998 hearing, the trial court refused to rule on the objections, and so the Trusts lodged an objection to the court's refusal to rule. We find that by failing to obtain a ruling or a refusal to rule on the hearsay objections until after summary judgment was granted, the Trusts did not preserve error.[4] *See* Tex.R.App.P. 33.1(a); *see also Dolcefino*, 19 S.W.3d at 926 (emphasizing that it remains "incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver"). Accordingly, these statements are part of the record before us on appeal. *See Blan v. Ali*, 7 S.W.3d 741, 748 n. 6 (Tex.App.— Houston [14th Dist.] 1999, no pet.).

The Trusts' second point of error addressing objections to the form of Porter & Hedges's summary judgment affidavits is overruled. That portion of the Trusts' first point of error which alleges the affidavits were substantively defective is also overruled.

### Porter & Hedges's Duty to the Trusts

In the Trusts' first point of error, Appellants argue that Porter & Hedges failed to conclusively establish its affirmative defenses. Because we find Porter & Hedges contention that they owed no duty to the Trusts dispositive of this appeal, we will not address the remainder of Porter & Hedges's arguments.

Porter & Hedges argues that, because the Trusts were not clients, Porter & Hedges owed no duty to the Trusts. The Trusts contend, however, that Porter & Hedges violated "independent duties" owed under the terms of the settlement agreement with Atkins. In particular, the Trusts complain that Porter & Hedges violated contractual duties of cooperation, as well as its obligation to act independently as an escrow agent or stakeholder, trustee, and fiduciary of the net proceeds. Porter & Hedges moved for summary judgment on the grounds that the firm breached no such independent duties and that it otherwise engaged in no wrongful conduct. Each of these duties is discussed separately below.

### Contractual Duty

■ The Trusts complain that Porter & Hedges violated contractual duties set out in the settlement agreement with Atkins. Specifically, the Trusts claim that Porter & Hedges violated both express and implied duties "to cooperate with the Trusts and provide them with supporting documentation for the gross proceeds deductions." Porter & Hedges contends that it was entitled to summary judgment on this claim because no such duty was breached.

The Trusts point to the following clause in the settlement agreement with Atkins which expressly requires cooperation:

> **6. *Reasonable Cooperation.*** As soon as possible following the execution of this Agreement, the undersigned parties shall do, or shall cause their agents and attorneys to do, whatever is reasonably necessary within the contemplation of this Agreement, should anything else be necessary, to fully and finally dispose of all disputes, differences, and matters

4. The Trusts argue that, because of their efforts to obtain a ruling, this Court should "presume" that their form objections were overruled. The Trusts cite no authority for this proposition and, instead, ask this Court to create an "equitable-type exception" in light of the trial court's refusal to rule. The Trusts argue further that the "mother hubbard clause" found in the trial court's final judgment, which expressly stated that "all relief not specifically granted in this Judgment is denied," effectively overruled the Trusts' form objections. Again, the Trusts cite no authority for this proposition. While we recognize that application of the waiver rule under these circumstances may seem unfair, it nevertheless remains the responsibility of the party asserting the objections to obtain a ruling at or before the time the trial court rules on the motion for summary judgment. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex.App.—Houston [14th Dist.] 2000, no pet.). Accordingly, we decline to create an exception in this instance.

in controversy in the above-entitled and numbered action, to include without limitation whatever is reasonably necessary to effectuate the signing, delivery, execution, filing, recording, and entry, as may be contemplated herein of any documents in the form attached hereto as exhibits, or otherwise described or contemplated herein, as may be necessary to conclude such action, to fully release the parties as contemplated herein, and to otherwise fulfill the terms specified in this Agreement.

The Trusts insist that, by repeatedly refusing their requests for documentation in support of the expenses that the law firm proposed deducting from the gross proceeds to arrive at the net amount, Porter & Hedges violated the express contractual duty found in paragraph 6 of the settlement agreement.

Porter & Hedges points out that Atkins's attorneys only agreed to be bound by paragraphs 4 and 7 of the settlement agreement. Paragraph 4 governs calculation and distribution of the net proceeds. Paragraph 7 contains a confidentiality clause. Although Burgert did acknowledge his "co-responsibility for the proper distribution" of the net proceeds, there is no evidence that Porter & Hedges agreed to be bound by the cooperation clause found in paragraph 6 of the settlement agreement; thus, no express contractual duty was breached. Summary judgment was therefore proper on the Trusts' claims for breach of contract based upon an express provision of the settlement agreement.

■ The Trusts contend further that Porter & Hedges violated an implied duty to cooperate. However, we are mindful of the fact that "Texas law does not favor implied covenants." *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 434 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Nalle v. Taco Bell Corp.*, 914 S.W.2d 685, 687 (Tex.App.—Austin 1996, writ denied)). As a general rule, we look only to the written contract to discern the obligations of the contracting parties. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex.1981); *Danciger Oil & Ref. Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941). Therefore, we will look beyond the written agreement and imply a covenant only if it is "necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole." *Danciger*, 154 S.W.2d at 635. An implied covenant is sufficiently necessary to the parties' intentions only if the obligation "was so clearly within the contemplation of the parties that they deemed it unnecessary to express...." *Id.* We will not imply a covenant simply because it is needed to make the contract fair, wise, or just. *See id.*

■ In this case, paragraph 6 of the settlement agreement contains an express duty to cooperate. However, Atkins's attorneys agreed to be bound only by paragraphs 4 and 7 of that agreement. "There can be no implied covenant as to a matter specifically covered by the written terms of the contract." *Bank One*, 967 S.W.2d at 434–35. Because the parties specifically contracted the extent of their duty to cooperate, and failed to subject their attorneys to that obligation, we decline to imply additional duties in this instance. Accordingly, we hold that Porter & Hedges conclusively established a defense to the Trusts' breach of contract claim based upon the implied duty of cooperation and that summary judgment was therefore proper on that claim.

### Escrow Agents/Stakeholders

■ The Trusts complain that Porter & Hedges violated its duty to act as an independent escrow agent or stakeholder of the settlement proceeds by "zealously" representing Atkins's interests in handling the settlement proceeds, to the detriment of the Trusts. Porter & Hedges insists that, as counsel for Atkins, it was neither an escrow agent nor a stakeholder of the Motorola settlement funds, and so no such duty was created or breached.

In Texas, an escrow agent is appointed through a specific written instrument which imparts a legal obligation. *See Bell v. Safeco Title Ins. Co.*, 830 S.W.2d 157, 160 (Tex.App.—Dallas 1992, writ denied). The "escrow relationship is a stakeholder relationship that carries special duties," including those that are fiduciary in nature. *See id.* at 161. Once appointed, the escrow agent's duties are strictly limited to those defined by the escrow agreement. *See Equisource Realty Corp. v. Crown Life Ins. Co.*, 854 S.W.2d 691, 697 (Tex.App.—Dallas 1993, no writ). Here, the Trusts point to no written agreement appointing Porter & Hedges as an escrow agent. Indeed, the Motorola settlement agreement specifically appoints Texas Commerce Bank as the "independent escrow agent" in charge of the funds. Absent a written agreement which appointed Porter & Hedges as an escrow agent, Porter & Hedges had no duty to act as one. *See Bell*, 830 S.W.2d at 160; *Equisource*, 854 S.W.2d at 697. Therefore, summary judgment was proper on the Trusts' claims that Porter & Hedges's breached its duty to act as an escrow agent.

### Trustees

The Trusts claim that, by receiving the settlement proceeds, Porter & Hedges agreed to act as a trustee of those funds. The Trusts complain, therefore, that Porter & Hedges breached its duty as a trustee by failing to protect the Trusts' interests. Porter & Hedges maintains that it was not a trustee of the settlement funds, and that no such duty was established or breached.

The Texas Trust Code dictates that a trust is created "only if the settlor manifests an intention to create a trust." Tex.Prop.Code Ann. § 112.002 (Vernon 1995). A court cannot impose a trust where the parties have contemplated another relationship. *See Spiritas v. Robinowitz*, 544 S.W.2d 710, 715 (Tex.Civ. App.—Dallas 1976, writ ref'd n.r.e.). In this instance, the settlement agreement between the Trusts and Atkins governs the parties' relationship and Porter & Hedges's role in the transaction. The settlement agreement contains no language indicating an intent to create a trust. Absent a clear intention to create a trust, we conclude that the settlement agreement does not create one.[5] *See id.* Because no trust was created, Porter & Hedges was not a trustee and had no duty to act as one as a matter of law. Summary judgment was therefore appropriate on the Trusts' claim for breach of duty as a trustee.[6]

### Fiduciaries

The Trusts contend further that Porter & Hedges was a fiduciary of the settlement funds and that it breached its duty by representing the interest of its client, Atkins, instead of interests belong-

---

5. Ordinarily, an express trust does not arise unless the owner of property has shown an unequivocal intention to create a trust. *See Alexander v. Botsford*, 439 S.W.2d 414, 417 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.) Likewise, a trust by implication may only arise where the intent to create a trust appears reasonably clear from the terms of the instrument, construed in light of the surrounding circumstances. *See Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex.1988). Neither type of trust was created here.

6. The Trusts rely on *Security State Bank v. Valley Wide Elec. Supply Co.*, 752 S.W.2d 661, 665 (Tex.App.—Corpus Christi 1988, writ denied) and *First Nat'l Bank v. Slaton I.S.D.*, 58 S.W.2d 870, 873 (Tex.Civ.App.—Amarillo 1933, writ dismissed), which hold that, generally speaking, when money is delivered by one person to another for a specific purpose, the person accepting the money becomes a trustee and such a transaction creates a trust. These cases each involved the deposit of funds with a bank, not an opposing counsel's law firm. No similar deposit was made here, and so the cases the Trusts point to are distinguishable. Further, under the facts present in this case, we decline to find that a client's deposit of funds into his attorneys' trust account creates a trustee/beneficiary relationship between his lawyers and an opposing party.

ing to the Trusts. Porter & Hedges denies that it owed a fiduciary duty to the Trusts or that such a relationship existed between the law firm and the Trusts; therefore, it claims no fiduciary duty was breached.

■■■■ A fiduciary duty requires the fiduciary to place the interest of the other party above his own. *See Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). There are two types of fiduciary relationships. The first is a formal fiduciary relationship in which a duty arises as a matter of law, including those between an attorney and client, a principal and agent, a trustee and beneficiary, and partners in a partnership. *See Insurance Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998); *Crim Truck & Tractor Co. v. Navistar Int'l,* 823 S.W.2d 591, 593–94 (Tex.1992); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980). The second is an informal fiduciary relationship, which may arise "from a moral, social, domestic or purely personal relationship ... called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex.1998). In that context, a confidential relationship has been found to exist in cases "in which 'influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Id.* (quoting *Crim Truck,* 823 S.W.2d at 594). Here, the Trusts contend that Porter & Hedges owed them a fiduciary duty because they were acting as trustees, escrow agents or stakeholders of the net proceeds. As noted above, however, Porter & Hedges was not an escrow agent, stakeholder, or trustee, as a matter of law. Accordingly, there was no formal relationship between Porter & Hedges and the Trusts giving rise to a fiduciary duty.

■■■■ The question of whether a confidential relationship exists giving rise to an informal fiduciary relationship is ordinarily one of fact, unless the issue is one of no evidence, and then it is a question of law. *See Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994, writ denied). In Texas, a fiduciary relationship is an extraordinary one and will not be lightly created. *See id.* The mere fact that one party subjectively trusts another does not, alone, indicate that confidence is placed in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required. *See id.* Here, the only evidence of a confidential relationship between the parties is the Trusts' contention that they relied on Porter & Hedges to make proper deductions from the gross proceeds in accordance with the settlement agreement.[7] This evidence amounts to no more than a mere scintilla of proof that a confidential relationship was contemplated and is, therefore, no evidence that such a relationship existed. *See Crim Truck,* 823 S.W.2d at 594–95; *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). In fact, the adversarial relationship between the Trusts and Porter & Hedges, as counsel for Atkins, militates against a finding that a fiduciary or confidential relationship existed between Porter & Hedges and the Trusts. *See, e.g., Patrick v. Howard,* 904 S.W.2d 941, 945 (Tex.App.—Austin 1995, no writ) (noting that the adversarial relationship between the parties was the "antithesis of a confidential relationship"). Because Porter & Hedges demonstrated that there was no formal or informal fiduciary relationship with the Trusts, the Trusts' claims for breach of fiduciary duty fail as a matter of law. Accordingly, summary judgment was proper on the Trusts' claim for breach of fiduciary duty.

### "Wrongful Litigation Conduct"

Porter & Hedges maintains further that, because the Trusts were not clients, the

---

7. In this case, the Trusts point to a letter from one of Atkins's attorneys which purports to characterize Porter & Hedges as a "stakeholder" of the settlement funds. This type of unilateral characterization, alone, is not sufficient to create a fiduciary duty. *See Crim Truck,* 823 S.W.2d at 594–95; *Kline,* 874 S.W.2d at 786.

Trusts have "no right of recovery, under any cause of action," as a matter of law, for conduct in connection with its representation of Atkins.[8] As support, Porter & Hedges relies primarily on the decisions in *Taco Bell Corp. v. Cracken*, 939 F.Supp. 528 (N.D.Tex.1996) and *Bradt v. West*, 892 S.W.2d 56 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In *Bradt*, the First Court of Appeals held that an attorney does not have a right of recovery, under any theory, against another attorney arising from conduct in which the second attorney engaged while representing a party in a lawsuit in which the first attorney also represented a party. *See* 892 S.W.2d at 71–72. In that case, the appellate court explained as follows:

> The public has an interest in "loyal, faithful and aggressive representation by the legal profession...." An attorney is thus charged with the duty of zealously representing his clients within the bounds of the law. In fulfilling this duty, an attorney "ha[s] the right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages...." Any other rule would act as a severe and crippling deterrent to the ends of justice for the reason that a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled.

*Id.* at 71 (internal citations omitted). At least two other courts of appeals in Texas have agreed and followed the holding in *Bradt* where an attorney's conduct in representing a client is at issue. *See Renfroe v. Jones & Assocs.*, 947 S.W.2d 285 (Tex.

App.—Fort Worth 1997, writ denied); *see also White v. Bayless*, 32 S.W.3d 271 (Tex. App.—San Antonio 2000, no pet. h.). In *Taco Bell*, a federal district court interpreting Texas law has extended the holding in *Bradt* to cases involving the liability of attorneys in suits brought by opposing parties. *See* 939 F.Supp. at 532. According to the analysis in *Bradt* and *Taco Bell*, suits brought against attorneys by opposing parties are disallowed because "an attorney's knowledge that he may be sued ... would favor tentative rather than zealous representation of the client, which is contrary to professional ideals and public expectations." *Taco Bell*, 939 F.Supp. at 532 (citing *Bradt*, 892 S.W.2d at 72). A contrary policy "would dilute the vigor with which Texas attorneys represent their clients" and would "not be in the best interests of justice." *Taco Bell*, 939 F.Supp. at 532 (citing *Bradt*, 892 S.W.2d at 72); *see also Renfroe*, 947 S.W.2d at 288.

To enforce the rule enunciated in *Bradt* and *Taco Bell*, courts must focus on the type of conduct in which the attorney engages rather than on whether the conduct was meritorious in the context of the underlying lawsuit. *See Bradt*, 892 S.W.2d at 72. For example, there is no right of recovery against an attorney for filing motions, even if that filing is frivolous or without merit, because "making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *See id.* This is so because the law provides punishment for such conduct in the form of sanctions. *See* Tex.R.Civ.P. 13 (governing the filing of improper pleadings, motions, and "other papers"); *see also* Tex.R.Civ.P. 215 (governing abusive discovery practices); and Tex.Gov't Code Ann. § 21.002 (provid-

---

**8.** Porter & Hedges complains that, because they owed no duty to the Trusts, as non-clients, the Trusts have "no standing to sue" under any theory. Because of our discussion on the issue of whether Porter & Hedges owed an independent duty to the Trusts in its capacity as counsel for Atkins, we need not address whether the Trusts' had "standing" to sue in this instance.

ing that attorneys may be held in contempt of court). Because other sanctions are available, an attorney's conduct is not actionable even if it is frivolous or without merit as long as the attorney's alleged conduct was part of discharging his duties in representing his client. *See Bradt,* 892 S.W.2d at 72. To determine whether Porter & Hedges's conduct is actionable, or whether it is merely conduct undertaken in the representation of its client, Atkins, we must examine the nature of the complained of conduct.

 Here, the Trusts identify the following instances of wrongful conduct for which they claim Porter & Hedges is liable:

1. failing or refusing to provide supporting documentation for deductions from gross proceeds despite continuing and repeated written requests by the Trusts, thus forcing the Trusts to resort to "protracted and expensive legal action";

2. denying knowledge of the Trusts' repeated demands for supporting documentation;

3. repeatedly denying its co-responsibility for the proper distribution of the net proceeds;

4. filing a motion to strike the petition in intervention filed by the Trusts;

5. threatening to take legal action against the Trusts and their counsel and "falsely accusing the Trusts of fraud and wrongful conduct";

6. concealing the time of payment for the Motorola settlement funds to Atkins;

7. refusing to provide the Trusts with a copy of the Motorola "Mediation Agreement";

8. refusing to return phone calls or to answer written correspondence from the Trusts' representatives;

9. working with Lavine to produce a "Proceeds Distribution Worksheet" and to convince the Trusts to accept "as little as $725,336.00 of the net proceeds";

10. delayed providing information and documentation to the Trusts despite the fact that they knew Atkins had other creditors attempting to "seize the net proceeds";

11. knew that Atkins had told the Trusts' representatives that they would "never see 'one dime' of the net proceeds unless they agreed to reduce their interest in the net proceeds and did nothing to assist the Trusts in this regard";

12. attempted to deduct improper amounts from the gross proceeds of the Motorola settlement, including $8,000.00 for a private pilot, in excess of $38,000 in attorneys' fees, and $6,000 for secretarial overtime;

13. told the Trusts that they would "probably encounter serious Internal Revenue Service—tax implications because of some alleged fraud on the part of the Trusts."

The Trusts point to this conduct and allege it demonstrates that Porter & Hedges committed fraud and, further, engaged in a conspiracy to commit fraud along with their client.[9] In support of their position

9. The elements of fraud are: (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990). An actionable

civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *See Operation Rescue–Nat'l v. Planned Parenthood,* 975 S.W.2d 546, 553 (Tex.1998). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *See id.*

that Porter & Hedges engaged in both fraud and civil conspiracy in this instance, the Trusts rely on *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ) (citing *Poole v. Houston & T.C. Ry.*, 58 Tex. 134, 137 (1882)). In *Likover*, there were allegations that the attorney named in the suit was assisting his client in perpetrating a fraudulent business scheme involving the sale of an apartment complex. *See id.* at 471. A jury found, therefore, that the attorney was guilty of helping his client commit fraud. *See id.*

Taking all of the Trusts' allegations as true, as we must, the Trusts have failed to raise a genuine issue of material fact on whether Porter & Hedges was involved in assisting Atkins to perpetrate a fraud on the Trusts. Rather, the allegations made by the Trusts do no more than demonstrate that Porter & Hedges attempted to negotiate a smaller settlement with the Trusts on their clients' behalf in light of Atkins's precarious financial situation. The conduct complained of here, unlike the role played by the lawyer in *Likover*, involves acts or omissions undertaken as part of the discharge of Porter & Hedges's duties as counsel to an opposing party. *See Taco Bell*, 939 F.Supp. at 533. Because under Texas law it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable, the trial court's decision to grant summary judgment on the Trusts' fraud and conspiracy claims against Porter & Hedges was proper.[10] *See id.* at 532–33; *see also Bradt*, 892 S.W.2d at 74.

■■■■ Moreover, to the extent that the Trusts have also alleged claims of negligence, it is well established that, at common law, "an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by

the attorney's negligent representation of the client." *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex.1996); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 401 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd by agr.). Under this general rule, persons who are not in privity with an attorney cannot sue the attorney for legal malpractice. *See Barcelo*, 923 S.W.2d at 577; *Vinson & Elkins*, 946 S.W.2d at 401. Because it is undisputed that the Trusts were not represented by Porter & Hedges, any claim that the Trusts were damaged by Porter & Hedges's negligence, if any, during the course of the firm's representation of Atkins fails as a matter of law. *Barcelo*, 923 S.W.2d at 577.

In post-submission briefing, the Trusts submit that Porter & Hedges is subject to a negligent misrepresentation claim, citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex.1999). In *McCamish*, the high court held that a nonclient may bring a cause of action, as defined by section 552 of the Restatement of Torts, in cases such as those where one party to a transaction receives and relies on "an evaluation, such as an opinion letter, prepared by another party's attorney." *Id.* at 793. Section 552 provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(1) (1977); *see Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

---

**10.** The Trusts argue on appeal that summary judgment on their claims of fraud and conspiracy was not proper because Porter & Hedges did not move for summary judgment on those causes of action. Clearly, however,

Porter & Hedges argued that the Trusts had "no right of recovery, under any cause of action." The Trusts contention on this issue is therefore without merit.

In this instance, the Trusts' sole allegation against Porter & Hedges is that Burgert "misrepresented the facts" when he advised the Trusts that they were guilty of tortiously interfering with the settlement agreement between Motorola and Atkins. There is no allegation that the Trusts relied on Burgert's alleged misrepresentation to their detriment. Nor would such reliance have been justifiable, given the adversarial nature of the parties' relationship. *See McCamish,* 991 S.W.2d at 794 (explaining that a third party's reliance on an attorney's representation is not justified when the representation takes place in the adversarial context). Therefore, the lone allegation raised by the Trusts does not rise to the level of a negligent misrepresentation claim as contemplated by *McCamish.* Accordingly, we hold that summary judgment was proper on the negligent misrepresentation claim lodged by the Trusts.

### Duress

■■■ Porter & Hedges also moved for summary judgment on the Trusts' claim that they are entitled to a judgment because they accepted a settlement during mediation under pressure or economic duress. Porter & Hedges argue that the Trusts have no valid claim against the law firm for duress, and so it was entitled to summary judgment on that issue.

■■■ Texas courts have consistently held that, as a matter of law, there can be no claim of duress unless the following elements are present: (1) there is a threat or action taken without legal justification; (2) the action or threat was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and that which it was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. *See Creative Mfg., Inc. v. Unik, Inc.,* 726 S.W.2d 207, 211 (Tex.App.—Fort Worth

1987, writ ref'd n.r.e.) (quoting *Dale v. Simon,* 267 S.W. 467, 470 (Tex. Comm'n App.1924, judgm't adopted); *see also Nance v. R.T.C.,* 803 S.W.2d 323, 333 (Tex. App.—San Antonio 1990, *writ denied,* 813 S.W.2d 154 (Tex.1991) (per curiam). In this instance, the Trusts accuse Porter & Hedges of refusing to cooperate with the Trusts by providing supporting documentation for the litigation expenses it planned to deduct from the gross proceeds and, further, of making "adversarial comments." The Trusts also complain that Porter & Hedges's "unnecessary and unreasonable delays" made the Trusts' share of the net proceeds vulnerable to claims by Atkins's other third-party creditors, including the Internal Revenue Service. These allegations, taken as true, merely demonstrate that any threat to the Trusts' portion of the net proceeds existed because of Atkins's precarious financial situation, and not Porter & Hedges's conduct. Thus, the Trusts failed to raise a genuine issue of material fact as to whether they agreed to settle at the mediation under duress caused by Porter & Hedges. *See, e.g., King v. Bishop,* 879 S.W.2d 222, 224 (Tex.App.—Houston [14th Dist.] 1994, no writ) (noting that a claim of duress fails where the alleged duress emanates from a third person who has no involvement with the accused). Accordingly, summary judgment on the issue of duress was proper.

### CONCLUSION

Based on the foregoing, each of the Trusts' points of error are overruled. Accordingly, the trial court's decision to grant summary judgment is affirmed.