**U.S. BANK NATIONAL ASSOCIATION, a National Bank Association, as Liquidating Trustee, Appellant**

**v.**

**John R. STANLEY, Walter S. Piontek, Ted E. Davis, Ronald H. Benson and R. Gerald Bennett, Appellees.**

No. 14–08–00567–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 15, 2009.

Kristi L. Hamilton, Houston, TX, Herbert Beigel, Tucson, AZ, for appellants.

Alexander Carl Chae, Frank G. Jones, John Denis Sheppard, Houston, TX, Kimberly Marie Phillips, Matthew J. Schroeder, Stacy R. Obenhaus, Dallas, TX, for appellees.

Panel consists of Justices SEYMORE, BROWN and SULLIVAN.

## OPINION

JEFFREY V. BROWN, Justice.

Appellant U.S. Bank National Association appeals from the trial court's orders granting the appellees' motions for summary judgment. U.S. Bank contends that (1) the factual record supports its claim for the appellees' breach of fiduciary obligations, appellee John R. Stanley's breach of an employment agreement, and its entitlement to damages; (2) the appellees' objections to U.S. Bank's summary-judgment evidence and expert testimony and opinions are without merit; and (3) the *Gheewalla*[1] doctrine, providing that the board of directors of an insolvent corporation does not owe fiduciary duties to the creditors of the corporation, does not apply or otherwise support summary judgment for the appellees. For the reasons explained below, we affirm.

## I

TransTexas Gas Corporation, an oil and gas exploration company, was incorporated in Delaware and maintained its principal place of business in Harris County. In 1999, TransTexas was suffering significant liquidity problems, found itself deeply in debt, and filed for protection under Chapter 11 of the Bankruptcy Code. The company was reorganized in the bankruptcy and re-emerged under a court-approved bankruptcy plan that became effective in March 2000.

Under the 2000 plan, certain creditors of TransTexas—the Senior Noteholders—received both Senior Secured Notes and Senior Preferred Stock. The notes were to be redeemed in 2005 for $200 million. The Senior Noteholders also elected four of the five members of the company's board of directors, appellees Walter S. Piontek, Ted E. Davis, Ronald H. Benson, and R. Gerald Bennett (the "directors"). Appellee John R. Stanley and TransTexas entered into an employment agreement in which Stanley was to serve as TransTex-

---

1. *N. Am. Catholic Educ. Programming Found.,*      *Inc. v. Gheewalla,* 930 A.2d 92 (Del.2007).

as's chief executive officer and the chairman of the board of directors.

After the reorganization, TransTexas continued to have financial problems, and by the end of 2002, had it again filed for bankruptcy. U.S. Bank was named the liquidating trustee under the terms of a Senior Noteholders Liquidating Trust Agreement established in connection with the second Chapter 11 plan. The plan ultimately was confirmed in August 2003.[2]

In September 2003, U.S. Bank filed this lawsuit against Stanley and the directors "to recover substantial losses and damage suffered by TransTexas ... and the holders of Senior Notes." U.S. Bank alleged that during the period between the two bankruptcies, the appellees breached their fiduciary obligations by pursing strategies that they knew or should have known were excessively risky and not in TransTexas's best interests, and that they knew that these strategies represented a material conflict of interest between Stanley and TransTexas. Among other things, U.S. Bank alleged that Stanley and the directors abdicated their duties and obligations in corporate governance, expended enormous sums in unreasonably high-risk oil and gas exploration developments and prospects, expended unreasonable amounts for general and administrative expenses, engaged in self-dealing, and pursued an unsound business strategy resulting in a loss to TransTexas of over $200 million.[3] U.S. Bank also alleged that Stanley breached his employment agreement.

In 2005, Stanley and the directors each filed traditional and no-evidence motions for summary judgment. Stanley moved for traditional summary judgment on the grounds that U.S. Bank's claims were barred because TransTexas and Stanley executed a valid and enforceable release, and because U.S. Bank's breach-of-fiduciary-duty claims were barred by the "exculpatory clause" in TransTexas's Delaware certificate of incorporation. Stanley's no-evidence motion for summary judgment was based on the grounds that U.S. Bank had no evidence that Stanley owed any fiduciary obligations to TransTexas's senior creditors or that TransTexas suffered any damages as a result of Stanley's allegedly wrongful conduct.

The directors moved for traditional summary judgment on the grounds that they owed no duty to the Senior Noteholders or other creditors of TransTexas, they were protected by the exculpatory provision contained in TransTexas's certificate of incorporation, and no separate cause of action existed for aiding and abetting another fiduciary's breach of fiduciary duty to TransTexas. The directors also moved for no-evidence summary judgment on the grounds that U.S. Bank had no evidence that their alleged acts or omissions fell outside the protections of the business-judgment rule, that a fiduciary duty existed between them and the Senior Noteholders or other creditors of TransTexas, that they aided and abetted Stanley in his alleged breach of duty, that TransTexas suffered any monetary loss or other injury, or that any act or omission by them caused any monetary loss or other injury to TransTexas or the Senior Noteholders.

U.S. Bank responded to the motions and attached evidence including the reports of its liability expert, Ralph Hellmold, and its damages expert, Jon Young. Stanley moved to exclude Hellmold's and Young's

2. Neither the 2000 plan nor the 2003 plan are in evidence. The information concerning the contents of the plans is drawn from the representations in U.S. Bank's pleadings.

3. In its second amended petition, the live pleading for purposes of this summary-judgment review, U.S. Bank asserted damages "in an amount not exceeding $200,000,000."

testimony and opinions. Additionally, Stanley and the directors each filed objections to U.S. Bank's summary-judgment evidence.

In June 2007, Stanley and the directors jointly filed a notice concerning the Delaware Supreme Court's opinion in *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92 (Del.2007), in which the court held that "creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against its directors." *Id.* at 94. Stanley and the directors urged that this authority was controlling because, under *Gheewalla*, the appellees owed no duty to TransTexas's creditors; therefore the appellees' motions for summary judgment should be granted because U.S. Bank alleged no claims for damages other than those brought on behalf of third-party creditors.

In response to the trial court's request for supplemental briefing, U.S. Bank contended that, as alleged in its second amended petition,[4] it was assigned all of the claims of TransTexas, its shareholders and creditors, and the Senior Secured Noteholders also owned all of the preferred shares and a controlling percentage of the common stock of TransTexas and elected the board of directors. Thus, U.S.

Bank argued, the policy underlying the *Gheewalla* court's refusal to recognize a direct breach-of-fiduciary-duty claim by creditors did not exist in this case because there was no conflict between shareholders and creditors. Moreover, U.S. Bank urged, Stanley's and the directors' arguments concerning damages were incorrect because the loss to the Noteholders was equivalent to the diminution of TransTexas's value.

On May 21, 2008, the trial court signed a final judgment in which it overruled Stanley's objections "to testimony" by U.S. Bank's experts Young and Hellmold, granted Stanley's and the directors' motions for summary judgment, and ordered that U.S. Bank take nothing.[5] This appeal followed.[6]

## II

As noted above, U.S. Bank raises three issues on appeal: (1) the factual record supports its claim for the appellees' breaches of fiduciary obligations, appellee John R. Stanley's breach of an employment agreement, and U.S. Bank's entitlement to damages; (2) the appellees' objections to U.S. Bank's summary-judgment evidence and expert testimony and opinions are without merit; and (3) the *Gheewalla* doctrine does not apply or otherwise support summary judgment for appellees. Both U.S. Bank and the appellees agree

4. The trial court granted leave to U.S. Bank to amend its petition after *Gheewalla* issued, and it is undisputed that, for purposes of the summary-judgment review, U.S. Bank's second amended petition is the live pleading.

5. The record does not include any rulings on Stanley's and the directors' objections to U.S. Bank's summary-judgment evidence, which were filed separately from Stanley's motions to exclude the expert testimony and opinions of Hellmold and Young. Moreover, the statement in the trial court's order that "All relief not granted herein is DENIED" does not con-

stitute a ruling overruling those objections. *See Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 436 n. 4 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

6. U.S. Bank's notice of appeal appears to attempt to add additional defendants, namely "John Does I–X." But these purported defendants do not appear in the record below in the pleadings or the final judgment. Moreover, U.S. Bank makes no reference to them. We disregard U.S. Bank's apparent attempt to add additional defendants on appeal.

that Delaware law governs the substantive issues raised.

We will first address U.S. Bank's third issue to explain that although *Gheewalla* disposes of any claims U.S. Bank may purport to bring directly on behalf of creditors, it does not dispose of any claims U.S. Bank allegedly asserts on behalf of TransTexas. We will then turn to U.S. Bank's first issue, in which we explain that the trial court did not err in granting summary judgment on U.S. Bank's claims brought on behalf of TransTexas because it presented no evidence of damages to TransTexas. Because of our disposition of these issues, we do not reach U.S. Bank's second issue.

### A

Our review of summary judgments is de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000). Here, the appellees moved for summary judgment on both traditional and no-evidence grounds; thus, we apply the established standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004) (traditional summary judgment); *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (no-evidence summary judgment).

### B

In its third issue, U.S. Bank contends that the Delaware Supreme Court's opinion in *Gheewalla* does not support the trial court's grant of summary judgment. Specifically, in its appellate brief, U.S. Bank asserts that the case has no relevance because U.S. Bank, as trustee, received an assignment of TransTexas's claims, as well as those of its creditors, and its second amended petition clearly asserts claims on behalf of TransTexas.[7] Further, U.S. Bank points out that the Senior Secured Noteholders also owned preferred and common shares of TransTexas and elected the board of directors, making this case distinguishable on its facts from *Gheewalla.*

In *Gheewalla,* the court held that "the creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against the corporation's directors." 930 A.2d at 94. In so doing, the court resolved an issue that the appellees had raised below but had not been conclusively determined when U.S. Bank first filed suit on behalf of "TransTexas ... and the holders of Senior Notes issued by TransTexas." The *Gheewalla* court explained that " 'the general rule is that directors do not owe creditors duties beyond the relevant contractual terms.' " *Id.* at 99 (citations omitted). In reaching its conclusion, the court noted that "Delaware courts have traditionally been reluctant to expand existing fiduciary duties." *Id.* The court went on to explain that the creditors of an insolvent corporation do have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. *Id.* at 101. This is because insolvency or near insolvency "makes creditors the principal con-

---

7. Again, there is no evidence of any assignments of claims by creditors or shareholders in the record; we have only U.S. Bank's representations in its pleadings.

stituency injured by any fiduciary breaches that diminish the firm's value." *Id.* at 101–02. Thus, equity allows the creditors standing to pursue only derivative claims against directors of an insolvent corporation. *Id.* at 102.

■ Consequently, the *Gheewalla* court's ruling bars any direct claims of creditors U.S. Bank purports to bring on their behalf. Nevertheless, even after *Gheewalla* had issued and U.S. Bank was granted leave to file its second amended petition, it continued to maintain that it was bringing this lawsuit "to recover substantial losses and damage suffered by TransTexas ... *and* the holders of Senior Notes issued by TransTexas pursuant to that certain Indenture dated as of March 15, 2000 (the 'Senior Notes')" (emphasis added). And as noted above, U.S. Bank represents that it has received an assignment of the claims of both TransTexas and its creditors. Although its argument is unclear, U.S. Bank appears to attempt to distinguish *Gheewalla*—and thereby preserve the creditors' claims purportedly assigned to it—by arguing that (1) the *Gheewalla* court ruled as it did because it recognized a potential conflict of interest in allowing creditors to sue directors when directors' obligations to shareholders and creditors may differ, but (2) no such conflict exists under these facts because the Senior Noteholders are also shareholders who elected the directors.

We are not persuaded to extend Delaware law as U.S. Bank suggests. Indeed, Delaware law recognizes that the directors' obligations to a corporation and its shareholders may at times put them at odds with the creditors:

> It is the obligation of directors to attempt, within the law, to maximize the long-run interests of the corporation's stockholders; that they may sometimes do so 'at the expense' of others ... does

not for that reason constitute a breach of duty. It seems likely that corporate restructurings designed to maximize shareholder values may in some instances have the effect of requiring bondholders to bear greater risk of loss and thus in effect transfer economic value from bondholders to stockholders.

*Katz v. Oak Indus., Inc.*, 508 A.2d 873, 879 (Del.Ch.1986) (citations omitted); *see Gheewalla*, 930 A.2d at 103 (observing that allowing individual creditors to bring fiduciary claims directly "would create a conflict between [the] directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors").

Moreover, the *Gheewalla* court emphasized that creditors are not left without remedies: "While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent[-]conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights." *Gheewalla*, 930 A.2d at 99 (citing *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 790 (Del.Ch.2004)). Thus, the court observed, all of these protections "render the imposition of an additional, unique layer of protection through direct claims for breach of fiduciary duty unnecessary." *Id.* at 100.

Therefore, assuming that U.S. Bank purports to bring claims directly on behalf of creditors, *Gheewalla* forecloses such claims. And, in any event, at oral argument counsel for U.S. Bank represented that it brought this lawsuit on behalf of TransTexas, not TransTexas and its creditors. Additionally, nowhere in its appellate brief does U.S. Bank assert that it is bringing its claims derivatively on behalf

of the creditors or shareholders. Indeed, U.S. Bank asserts in its brief that "here, it was unnecessary to bring [TransTexas's] claims derivatively, since U.S. Bank owns those claims." Therefore, the trial court did not err to the extent it granted summary judgment on any direct-liability claims U.S. Bank brought on behalf of creditors. Nevertheless, to the extent U.S. Bank pursues claims on behalf of TransTexas, such claims are unaffected by the *Gheewalla* decision.

## C

Having determined that the *Gheewalla* opinion does not foreclose U.S. Bank's claims brought on behalf of TransTexas, we next turn to U.S. Bank's contention in its third issue that, among other things, it produced evidence that the alleged breaches of fiduciary obligations by Stanley and the directors caused damages to TransTexas. Both Stanley and the directors asserted in their motions for no-evidence summary judgment that U.S. Bank had no evidence that TransTexas suffered damages as a result of their conduct. Accordingly, we must ascertain whether U.S. Bank has pointed out summary-judgment evidence of probative force to raise a genuine issue of fact as to the element of damages. *See Nguyen v. Woodley*, 273 S.W.3d 891, 897 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

U.S. Bank claims that it has presented sufficient evidence of damages. Specifically, it points to (1) Hellmold's report and sworn testimony that Stanley's excessive spending, approved by the directors through action and inaction, caused TransTexas to suffer significant losses and

drove it into bankruptcy; (2) in a presentation to the board after Stanley's departure in July 2002, TransTexas's management advocated running the company in a cost-effective manner, pointing out that the company had spent $225 million over the previous two years without any positive results; (3) TransTexas estimated in its 2002 bankruptcy filings that its assets fell from $262 million to at most $28 million between the first and second bankruptcies; and (4) Young calculated that the Senior Preferred Shareholder's Senior Notes were devalued by about $183 million, which U.S. Bank contends reflects the "loss in equity to TransTexas."

■ Concerning the testimony and expert report of U.S. Bank's expert, Hellmold, we first note that U.S. Bank designated him as an expert on liability only, and it does not represent that he is designated to opine on damages. Further, the excerpts of Hellmold's testimony that U.S. Bank relies on were omitted from the record. Although U.S. Bank appended to its brief a portion of Hellmold's deposition containing the excerpts, the appellees have objected that this court should not consider documents outside the record. We agree. *See* Tex.R.App. P. 38.1(h); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n. 23 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Therefore, we do not consider U.S. Bank's references to Hellmold's deposition testimony and opinions.

■ We turn next to U.S. Bank's contention that Hellmold's expert report also presents evidence of damages.[8] But, in

---

8. Although the appellees objected below and on appeal that Hellmold's expert report was inadmissible hearsay, as noted above, the appellees did not obtain a ruling on that objection; therefore, this objection is not preserved for our review. *See* Tex.R.App. P. 33.1(a);

*Chapman Children's Trust*, 32 S.W.3d at 436 n. 4 (noting that "mother hubbard clause" in final judgment did not effectively overrule objections to affidavit and therefore hearsay objections were not preserved for review). Therefore, the report remains a part of the

this section of its brief, U.S. Bank makes only a fleeting reference to the report. It does not point out those parts of the sixty-three page report on which it relies, but merely invites us to consider the report "as noted above." It is thus unclear exactly what part of the report U.S. Bank contends raises a fact issue on damages. Nevertheless, we will review the report to determine whether it supports U.S. Bank's contention that "the excessive spending by Stanley and approved [by] the Outside Directors through action and inaction caused [TransTexas to] suffer significant losses and drove [TransTexas] into bankruptcy."

■ In its response to the appellees' no-evidence motion and on appeal, U.S. Bank cites to those parts of Hellmold's report in which he states that Stanley repeatedly and significantly overspent the amounts the board budgeted and that the directors pre-approved or ratified his actions. At the end of his report, Hellmold opines that despite numerous "red flags," the directors "were in total support of the business strategy of 'swinging for the fences' in order to try to pay off the Senior Preferred Stock and return control of [TransTexas] to Stanley," and that this was "in direct contravention of their fiduciary obligations to [TransTexas] and its creditors." Hellmold then concludes, in a cursory fashion, that the directors' actions "resulted in

[TransTexas] having extremely little value" by the time of the 2002 bankruptcy filing. Hellmold does not explain or discuss this alleged loss in value anywhere in his report, nor does he provide a damages theory, model, or even a calculation of the alleged loss in value. As U.S. Bank's liability expert, Hellmold goes to great lengths in his report to describe what he believes Stanley and the directors should and should not have done. But although the report sets forth a liability theory, it goes no further, and thus fails to raise a genuine issue of material fact as to the element of damages.

■ Likewise, the representation in a management presentation that the appellees authorized expenditures totaling $225 million with "no positive results" [9] and the evidence of the reduction in TransTexas' assets between the two bankruptcies does not raise a genuine issue as to damages. Companies often spend money that does not achieve positive results, and they may become insolvent as a result.[10] The mere assertion that TransTexas, a company engaged in oil and gas exploration efforts—an enterprise that inherently involves certain risks—spent too much money and achieved too little results—does not equate to a damages theory or model. There can be no recovery for damages that are speculative or conjectural. *Reardon v. Light-*

summary-judgment evidence. *See Wright v. Greenberg*, 2 S.W.3d 666, 676 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

9. U.S. Bank does not direct us to the specific page of the presentation referenced, but we presume it is referring to a page entitled "Change of Operating Philosophy" in which it describes the old "Swing for the Fences" philosophy as resulting in, among other things, "Proved Reserves Dropped Despite 2–Year Capital Expenditures of $225 Million."

10. We note that Delaware courts recognize that when the board of an insolvent corporation pursues in good faith a strategy that will

increase the corporation's value but also involves the incurrence of additional debt, "it does not become a guarantor of that strategy's success." *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del.Ch. 2006) Rather, "in such a scenario the directors are protected by the business-judgment rule. To conclude otherwise would fundamentally transform Delaware law." *Id.* Delaware law also acknowledges that "[d]irectors are expected to seek profit for stockholders, even at risk of failure. With the prospect of profit often comes the potential for defeat." *Id.* at 174.

*Path Techs., Inc.,* 183 S.W.3d 429, 442 (Tex. App.-Houston [14th Dist.] 2005, pet. denied); *Fitzgerald v. Antoine Nat'l Bank,* 980 S.W.2d 228, 231 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

Nevertheless, U.S. Bank contends that TransTexas's losses are some evidence of damages because it reflects a loss in "enterprise value," and it contended in its reply brief and at oral argument that no expert testimony is required to connect these alleged damages to the appellees' allegedly wrongful conduct. But the only case U.S. Bank cites does not support its position. *See BelCom, Inc. v. Robb,* 1998 WL 229527 (Del.Ch.1998). In *BelCom v. Robb,* the plaintiff offered an expert witness who testified that BelCom's enterprise value had been adversely affected by the actions of Robb, a director and shareholder of BelCom, and that no factors in the industry during the relevant time period could otherwise account for the decline in BelCom's value. *Id.* at *4. Thus, the expert concluded that the decline could only reasonably be attributed to Robb's actions and he opined that Robb caused millions of dollars in damages to the company. *Id.* at *4–5. U.S. Bank offers no similar testimony here to connect TransTexas's alleged losses to the appellees' alleged actions. Further, in its reply brief, the only evidence U.S. Bank points to as raising an issue that appellees' alleged wrongdoing caused TransTexas's damages is Hellmold's deposition testimony that was excluded from the record and which we do not consider.

Finally, U.S. Bank asserts that its only damages expert, Jon Young, presented evidence of TransTexas's damages in the

form of "the loss in equity" to TransTexas. To support this contention, U.S. Bank apparently refers to a portion of the following sentence in Young's original report: "The differences in equity interest values are estimated at 185.2 million, which is ultimately TransTexas' loss between each bankruptcy proceeding."[11] But Young's report reflects that his company was engaged "to determine an estimated amount of losses relating to the Senior Note Creditors" in TransTexas's bankruptcy proceedings, not to determine TransTexas's damages. His calculation of the loss to the creditors largely consisted of subtracting the value of the Senior Notes at the time of the second bankruptcy from their value at the time of the first bankruptcy, resulting in a difference in value of over $185.2 million. In a supplemental report, Young slightly revised this calculation, stating that "the overall financial effect to Senior Note holders as a result of TransTexas' July 2003 bankruptcy reorganization is a loss of $183.675–$184.675 million." Thus, Young's damages evidence was limited to the damages allegedly suffered by TransTexas's creditors, not by TransTexas.

U.S. Bank appears to contend that the loss to the creditors approximates the loss to TransTexas and so presents evidence of TransTexas's damages. But U.S. Bank does not present any evidence to support this contention. U.S. Bank also ignores its own position in its briefing, in which it stated, "Here, plaintiff has presented evidence of an injury specific to the Senior Noteholders and not shared by the shareholders or any other group-namely the approximately $184 million loss in the val-

11. U.S. Bank also attached a supplemental report in which Young's calculation of the loss to Senior Note Creditors was revised downward slightly, from $185.2 million to between $183.675–$184.675 million. As in the original report, the supplemental report

reflected that the purpose of Young's engagement was to "determine the estimated amount of loss related to the Senior Note Creditors in TransTexas' bankruptcy proceedings."

ue of the Senior Notes between the 2000 and 2002 bankruptcies."

Reviewing this evidence under the applicable standard of review, we cannot reasonably infer from it that U.S. Bank presented evidence of TransTexas's damages; at most, it offers mere speculation or conjecture that does not amount to more than a scintilla of evidence to support U.S. Bank's claims against Stanley and the directors.[12] Therefore, we hold that the trial court did not err in granting the no-evidence motions of Stanley and the directors on the grounds that U.S. Bank had no evidence of damages to TransTexas, and we overrule U.S. Bank's first issue on that basis.

* * *

We affirm the trial court's judgment.

12. U.S. Bank contends that Stanley did not assert a no-evidence issue as to the breach-of-contract claim. We disagree. In that portion of Stanley's no-evidence motion on damages, he asserted that "U.S. Bank can offer no evidence ... that TransTexas suffered any damages as a result of *Stanley's allegedly wrongful conduct*" and *"all* of the claims U.S. Bank asserts in TransTexas' name fail because U.S. Bank has no proof of damages to the company itself or to its shareholders" (emphasis added). Therefore, contrary to U.S. Bank's contention, Stanley argued that U.S. Bank had no evidence of damages to support both its breach-of-fiduciary-duty claim and its breach-of-contract claim against Stanley.