**Robert Earl FITZGERALD and Kristy L. Fitzgerald, Appellants,**

v.

**ANTOINE NATIONAL BANK, Appellee.**

No. 14–96–00148–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 3, 1998.

Before Chief Justice MURPHY, and Justices ANDERSON and EDELMAN.

## OPINION ON REHEARING

EDELMAN, J.

The opinion issued in this case on July 23, 1998 is withdrawn and the following opinion is issued in its place. Antoine National Bank's motion for rehearing is (a) granted as to the remand of the trial court's denial of attorney's fees to the Fitzgeralds, and (b) otherwise denied.

In this civil conspiracy and fraud case, Robert and Kristy Fitzgerald appeal a judgment entered in favor of Antoine National Bank ("Antoine") on numerous grounds. We affirm as modified in part, and reverse and remand in part.

### Background

Lanny Vlasak ("Lanny") and his wife, Margaret, owned a home on 1.0451 acres on Arrowood Circle in Houston ("Arrowood") and a 75 acre farm in Lavaca County ("Lavaca"). Liens on these properties secured two promissory notes executed by the Vlasaks to InterFirst Bank Fannin ("InterFirst").[1] Lanny was also the maker of a note to Antoine that was secured by other promissory notes payable to Lanny.

Lanny defaulted on the note to Antoine, and it filed suit in 1986 to collect the deficiency. A bankruptcy proceeding filed by the Vlasaks stayed Antoine's suit. In September of 1986, at the request of InterFirst, the bankruptcy court entered an agreed order (the "agreed order") giving the Vlasaks an exclusive right to sell Arrowood for 270 days. The proceeds of any such sale were to be applied to the Vlasaks' mortgage to InterFirst. If Arrowood was not sold after 270 days, InterFirst could foreclose its liens on Arrowood without the Vlasaks taking action to prevent it.

After the 270 day period expired and while Arrowood was posted for foreclosure, the Vlasaks sold Arrowood to the Fitzgeralds.

Steven E. Halpin, Houston, TX, for appellants.

Tanner S. Garth, Michael J., Zomik, Houston, TX, for appellee.

1. Although InterFirst later changed its name, we will refer to it as InterFirst throughout this opinion for simplicity.

InterFirst's note was repaid by the proceeds of the Fitzgeralds' third-party financing, and InterFirst released its lien on the property. However, although the sale documents reflect a sale price of $650,000, the Vlasaks agreed to "discount" that price by 25%. Therefore, the Fitzgeralds never paid the Vlasaks the $162,500 portion of the sale price that was due from the Fitzgeralds in cash. After the sale closed in August of 1987, the Fitzgeralds leased Arrowood back to the Vlasaks who continued to occupy it. The bankruptcy proceeding was dismissed in September of 1987, and the Vlasaks designated Lavaca as their homestead in the Lavaca County property records in 1988.

In 1989, Antoine obtained a judgment (the "judgment") in its lawsuit against Lanny for approximately $75,000 plus interest and attorney's fees. An abstract of this judgment was recorded in Harris and Lavaca Counties in February of 1989. After seeking unsuccessfully to execute on Lavaca in satisfaction of the judgment, Antoine filed the current lawsuit against the Vlasaks, Fitzgeralds, and others alleging that the Arrowood sale and designation of Lavaca as a homestead were void and made pursuant to a conspiracy to defraud the Vlasaks' creditors.[2] Antoine eventually dismissed all of the defendants from the suit except the Fitzgeralds. Following trial, the court awarded Antoine nearly $80,000 in damages plus interest, costs, and attorney's fees.

Among other things, the trial court's findings of facts and conclusions of law stated that: (1) the Vlasaks' sale of Arrowood to the Fitzgeralds was a sham transaction made for insufficient consideration; (2) the designation of Lavaca as a homestead was false in that the Vlasaks never occupied that property; (3) Antoine was precluded from levying on Lavaca by the false designation of it as a homestead; and (4) but for the conspiracy, Antoine could have recovered its debt, either by levying on Lavaca or attaching the proceeds of Arrowood.

## Causation

The Fitzgerald's fifth, eighth, thirty-fourth, thirty-seventh, thirty-eighth, thirty-ninth, fifty-first, fifty-second, fifty-third, fifty-fourth, fifty-seventh, fifty-eighth, and sixtieth points of error challenge the trial court's findings of fact and conclusions of law that Antoine was damaged by the Fitzgeralds' actions. The trial court's findings of fact and conclusions of law found liability under various theories, including civil conspiracy, fraud, and violation of a federal criminal statute. However, the findings and conclusions indicate that the only damages awarded against the Fitzgeralds, whether for some or all of the liability theories, were to compensate Antoine for being prevented from executing the judgment against: (a) Lavaca by the Vlasaks' designation of it as a homestead; and (b) the proceeds of the sale of Arrowood by the failure of the Fitzgeralds to pay full consideration for it:

### [Findings of Fact]

13. On January 17, 1989, [Antoine] recovered a Judgment against [Lanny] ... in Cause No. 86–22249, in the 11th Judicial District Court of Texas, Harris County. The Judgment, in the amount of $74,995.83 with interest and attorney's fees in the amount of $4,520 .34, with post-judgment interest accruing thereon, remained outstanding and unpaid at the time of trial.... Indeed, [Antoine] attempted to levy on [Lavaca] but was precluded from doing so by the false designation of homestead made possible by the conspiracy. But for the conspiracy, [Antoine] could have recovered [its] debt, either by levying on [Lavaca] or by attaching the proceeds of the Arrowood sale.

### [Conclusions of Law]

6. [Antoine] has been damaged directly as a result of this conspiracy and civil fraud in that it has been unable to execute and satisfy its Judgment against [Lanny] by levying on the Vlasaks' non-homestead property. Alter-

---

2. Although the Fitzgeralds filed a counterclaim in this lawsuit, they have assigned no error on appeal to the denial of any affirmative relief sought in their counterclaim.

natively, had the consideration alleged by the Fitzgeralds been paid [to the Vlasaks], [Antoine] would have been able to satisfy the debt from those proceeds. [Antoine] has been damaged in an amount equal to the value of its Judgment against [Lanny] in the amount of $79,516.17 [$74,995.83 + $4,520.34] plus pre-judgment and post-judgment interest....

### Arrowood Proceeds

The Fitzgeralds' contend that Antoine was not damaged by the Fitzgeralds' failure to pay full consideration for Arrowood as a matter of law because: (1) Arrowood was exempt homestead property against which Antoine had no lien; (2) the net proceeds of the Arrowood sale were exempt for six months during which the Vlasaks could spend them in any manner they saw fit; and (3) a conveyance of exempt property may not be attacked as being in fraud of creditors because it deprives them of no right they have in the property.

■ To recover damages, a plaintiff has the burden to produce evidence from which the factfinder may reasonably infer that the damages claimed resulted from the defendant's conduct. See *Texarkana Memorial Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 838 (Tex.1997). Proof of causation cannot turn upon speculation or conjecture. See *Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex.1996).

■ A homestead is generally exempt from seizure for the claims of creditors, and the proceeds of sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale. See TEX. PROP.CODE ANN. § 41.001(a), (c) (Vernon Supp.1998). Moreover, a conveyance of exempt property may not be attacked as being made in fraud of creditors. See *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 805 (1956). This is because the law already removes homestead property from the reach of creditors, and, thus, the conveyance of the property, whether fraudulent or not, deprives

the creditors of no right they had against the property. See *Radney v. Clear Lake Forest Community Ass'n, Inc.*, 681 S.W.2d 191, 197 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ In this case, when the Arrowood sale was concluded, the proceeds therefrom were at least partly exempt[3] from seizure for creditors' claims and would remain so for six months. Therefore, any failure to pay or collect the exempt funds could not be attacked as being made in fraud of Antoine because it deprived Antoine of no right it had in the funds at the time of the Arrowood sale or for the next six months. Moreover, whether any of the exempt or non-exempt Arrowood proceeds might have remained unexpended and beyond the reach of other creditors for the roughly seventeen months from the time of the sale until Antoine obtained its judgment is too great a matter of speculation to base a finding of causation upon.

Antoine also complains that its rights in the Arrowood proceeds were compromised because Arrowood was sold without notice to creditors or approval of the Bankruptcy Court. However, by providing that Arrowood could be sold, either by the Vlasaks or at foreclosure, and that any proceeds would be applied to the InterFirst note, the agreed order specifically disposed of any Arrowood proceeds and thus any potential interest Antoine had in them. Although it was conceivable at the time the agreed order was proposed that the sale of Arrowood by InterFirst or the Vlasaks could yield proceeds above the amount required to satisfy the InterFirst note, the agreed order did not provide for: (1) notice or approval of the sale; (2) allocation of any such proceeds as between any exempt and non-exempt portions; or (3) disposition of any non-exempt proceeds. To the extent the omission of such matters could have prejudiced Antoine's rights to satisfy its debt from any non-exempt Arrowood proceeds above the amount owed to InterFirst, it was incumbent upon Antoine to seek to have those

---

3. Antoine contends that any homestead exemption applicable to Arrowood was limited to one acre of land. See TEX.PROP.CODE ANN § 41.002(a) (Vernon 1984) (an urban homestead may consist of no more than one acre of land).

matters addressed in the agreed order while it was under consideration by the Bankruptcy Court.

Therefore, we sustain the Fitzgeralds' challenge to the trial court's findings of fact and conclusions of law that, had the Fitzgeralds paid the stated consideration for Arrowood, Antoine could have satisfied its debt from those proceeds.

### Lavaca

The Fitzgeralds' also contend that Antoine was not damaged by the designation of Lavaca as a homestead as a matter of law because Antoine had no lien on that property and any damage it could have suffered in being deprived of an opportunity to execute upon it is too remote to be recoverable.

A general creditor who has no lien on the property of a debtor suffers no damage if that property is conveyed to another to evade payment because the creditor's damage in being deprived of an opportunity to make a levy is too remote. *See Stonecipher's Estate v. Butts' Estate*, 591 S.W.2d 806, 808 (Tex.1979). In this case, at the time Lavaca was designated as a homestead property, Antoine had no lien on it.[4] Thus, any damage Antoine could have suffered as a general creditor from being deprived of an opportunity to levy on Lavaca was too remote to be actionable. Therefore, we sustain the Fitzgeralds' challenge to the trial court's findings of fact and conclusions of law that, but for the Fitzgeralds' involvement in the alleged conspiracy, Antoine could have satisfied its debt by levying against Lavaca.[5] Because our findings that Antoine suffered no damage from the failure to pay full consideration for Arrowood or from the designation of Lavaca as a homestead result in reversal and rendi-

tion that Antoine take nothing on its claim for damages, and because the Fitzgeralds' prayer for relief seeks no further relief, we need not address the Fitzgeralds' remaining points of error except as to the award of attorney's fees.

### Attorney's Fees

Each party sought and the trial court awarded Antoine attorney's fees pursuant to the Declaratory Judgment Act. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997) (in a declaratory judgment action, the court may award costs and reasonable and necessary attorney's fees as are equitable and just). The award of attorney's fees and costs in a declaratory judgment action is within the trial court's discretion and is not dependent on a finding that a party substantially prevailed. *See Barshop v. Medina*, 925 S.W.2d 618, 637–38 (Tex.1996). Because our disposition of the case on appeal substantially affects the trial court's judgment, it could also affect its decision as to the award of attorney's fees and costs. Therefore, we will remand the award of attorney's fees and costs to the trial court for reconsideration in light of the disposition of the case on appeal. *See id.*

The Fitzgeralds' sixty-fifth point of error challenges the trial court's denial of attorney's fees to them. An award of attorney's fees in a declaratory judgment action is not limited to the plaintiff or party seeking affirmative declaratory relief but is available to either party if pled.[6] In this case, the Fitzgeralds pled a claim for attorney's fees only in their counterclaim for declaratory

---

**4.** Antoine did not obtain or abstract the judgment until the following year. *See* TEX.PROP.CODE ANN. § 52.001 (Vernon 1995) (the recording and indexing of an abstract of judgment generally creates a lien on any real property of a defendant in the county in which the abstract is recorded and indexed). Nor has Antoine established that it obtained a lien or equivalent interest in Lavaca by its participation as a listed creditor in the bankruptcy proceeding.

**5.** Because the issue is not before us, we do not address the right, if any, of Antoine to challenge

the homestead exemption on Lavaca and execute a judgment lien against it. *See, e.g., Caulley v. Caulley*, 806 S.W.2d 795, 796–97 (Tex.1991).

**6.** *See Templeton v. Dreiss*, 961 S.W.2d 645, 671 (Tex.App.—San Antonio 1998, pet. denied); *Federal Deposit Ins. Corp. v. Bodin Concrete Co.*, 869 S.W.2d 372, 382 (Tex.App.—Dallas 1993, writ denied); *Knighton v. International Business Mach. Corp.*, 856 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

 

judgment and not in their answers to Antoine's petitions, *i.e.*, for defending against Antoine's claims. At trial, the Fitzgeralds' attorney testified that he had segregated his fees between the work to defend Antoine's action and that to prosecute the Fitzgeralds' action against Antoine. When Antoine's attorney objected to the testimony concerning the fees to defend Antoine's action, the Fitzgeralds' attorney stated that he was not seeking to recover that amount, but was instead required to segregate it out. He further stated that he was asking the court to award his fees only for the *prosecution* of this action. Before cross-examining the Fitzgeralds' attorney on attorney's fees, Antoine's counsel moved to dismiss the Fitzgeralds' claim for attorney's fees on the ground that their counterclaim raised no issues beyond those included in Antoine's claims.[7] The trial court denied this motion but awarded no attorney's fees to the Fitzgeralds.

■ On appeal, the Fitzgeralds assign error specifically to the trial court's failure to award fees for their attorney's work *defending* Antoine's claims but not that for prosecuting the Fitzgerald's counterclaim. Because the Fitzgeralds did not in the trial court plead for or request attorney's fees for defending against Antoine's action, and because they have not asked us to review the denial of their request for attorney's fees for prosecuting their action, neither issue is properly before us. Therefore, the Fitzgeralds' sixty-fifth point of error is overruled.

Accordingly, we: (1) reverse the award to Antoine of damages, pre-judgment interest, post-judgment interest, costs, and attorney's fees; (2) render judgment that Antoine take nothing on its claim for damages; (3) remand the award of attorney's fees and costs to Antoine for reconsideration in light of the

disposition of the case on appeal; and (4) affirm the remainder of the judgment.

---

7. ·*See HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 638 (Tex.App.—Austin 1992, writ denied); *Hitchcock Properties, Inc. v. Lever-*ing, 776 S.W.2d 236, 239 (Tex.App.—Houston [1st Dist.] 1989, writ denied).