Affirmed
and Opinion filed September 15, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00567-CV

____________

 

U.S. BANK NATIONAL ASSOCIATION, A
NATIONAL BANK ASSOCIATION, AS LIQUIDATING TRUSTEE, Appellant

 

V.

 

JOHN R. STANLEY, WALTER S. PIONTEK,
TED E. DAVIS, RONALD H BENSON AND R. GERALD BENNETT, Appellees

 



 

On Appeal from the 133rd
District Court

Harris County, Texas

Trial Court Cause No. 2003-54145

 



 

O P I N I O N








Appellant U.S. Bank National Association
appeals from the trial court=s orders granting the appellees= motions for
summary judgment.  U.S. Bank contends that (1) the factual record supports its
claim for the appellees= breach of fiduciary obligations, appellee
John R. Stanley=s breach of an employment agreement, and
its entitlement to damages; (2) the appellees= objections to
U.S. Bank=s summary-judgment evidence and expert testimony and
opinions are without merit; and (3) the Gheewalla[1]
doctrine, providing that the board of directors of an insolvent corporation
does not owe fiduciary duties to the creditors of the corporation, does not
apply or otherwise support summary judgment for the appellees.  For the reasons
explained below, we affirm. 

I

TransTexas Gas Corporation, an oil and gas
exploration company, was incorporated in Delaware and maintained its principal
place of business in Harris County.  In 1999, TransTexas was suffering
significant liquidity problems, found itself deeply in debt, and it filed for
protection under Chapter 11 of the Bankruptcy Code.  The company was
reorganized in the bankruptcy and re-emerged under a court-approved bankruptcy
plan that became effective in March 2000. 

Under the 2000 plan, certain creditors of
TransTexasCthe Senior NoteholdersCreceived both
Senior Secured Notes and Senior Preferred Stock.  The notes were to be redeemed
in 2005 for $200 million.  The Senior Noteholders also elected four of the five
members of the company=s board of directors, appellees Walter S.
Piontek, Ted E. Davis, Ronald H. Benson, and R. Gerald Bennett (the Adirectors@).  Appellee John
R. Stanley and TransTexas entered into an employment agreement in which Stanley
was to serve as TransTexas=s chief executive officer and the chairman
of the board of directors. 

After the reorganization, TransTexas
continued to have financial problems, and by the end of 2002, had it again
filed for bankruptcy.  U.S. Bank was named the liquidating trustee under the
terms of a Senior Noteholders Liquidating Trust Agreement established in
connection with the second Chapter 11 plan.  The plan ultimately was confirmed
in August 2003.[2]









In September 2003, U.S. Bank filed this
lawsuit against Stanley and the directors Ato recover
substantial losses and damage suffered by TransTexas . . . and the holders of
Senior Notes.@  U.S. Bank alleged that during the period between the
two bankruptcies, the appellees breached their fiduciary obligations by pursing
strategies that they knew or should have known were excessively risky and not
in TransTexas=s best interests, and that they knew that these
strategies represented a material conflict of interest between Stanley and
TransTexas.  Among other things, U.S. Bank alleged that Stanley and the
directors abdicated their duties and obligations in corporate governance,
expended enormous sums in unreasonably high-risk oil and gas exploration
developments and prospects, expended unreasonable amounts for general and
administrative expenses, engaged in self-dealing, and pursued an unsound
business strategy resulting in a loss to TransTexas of over $200 million.[3] 
U.S. Bank also alleged that Stanley breached his employment agreement. 

In 2005, Stanley and the directors each
filed traditional and no-evidence motions for summary judgment.  Stanley moved
for traditional summary judgment on the grounds that U.S. Bank=s claims were
barred because TransTexas and Stanley executed a valid and enforceable release,
and because U.S. Bank=s breach-of-fiduciary-duty claims were
barred by the Aexculpatory clause@ in TransTexas=s Delaware
certificate of incorporation.  Stanley=s no-evidence
motion for summary judgment was based on the grounds that U.S. Bank had no
evidence that Stanley owed any fiduciary obligations to TransTexas=s senior creditors
and that TransTexas suffered any damages as a result of Stanley=s allegedly
wrongful conduct. 








The directors moved for traditional
summary judgment on the grounds that they owed no duty to the Senior
Noteholders or other creditors of TransTexas, they were protected by the
exculpatory provision contained in TransTexas=s certificate of
incorporation, and no separate cause of action existed for aiding and abetting
another fiduciary=s breach of fiduciary duty to TransTexas. 
The directors also moved for no-evidence summary judgment on the grounds that
U.S. Bank had no evidence that their alleged acts or omissions fell outside the
protections of the business-judgment rule, that a fiduciary duty existed
between them and the Senior Noteholders or other creditors of TransTexas, that
they aided and abetted Stanley in his alleged breach of duty, that TransTexas
suffered any monetary loss or other injury, or that any act or omission by them
caused any monetary loss or other injury to TransTexas or the Senior
Noteholders.

U.S. Bank responded to the motions and
attached evidence including the reports of its liability expert, Ralph
Hellmold, and its damages expert, Jon Young.  Stanley moved to exclude Hellmold=s and Young=s testimony and
opinions.  Additionally, Stanley and the directors each filed objections to
U.S. Bank=s summary-judgment evidence.  

In June 2007, Stanley and the directors
jointly filed a notice concerning the Delaware Supreme Court=s opinion in North American Catholic Educational
Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007), in which the court held
that Acreditors of a Delaware corporation
that is either insolvent or in the zone of insolvency have no right, as a
matter of law, to assert direct claims for breach of fiduciary duty against its
directors.@  Id. at 94.  Stanley and the directors urged that this authority
was controlling because, under Gheewalla, the appellees owed no duty to
TransTexas=s creditors; therefore the appellees= motions for
summary judgment should be granted because U.S. Bank alleged no claims for
damages other than those brought on behalf of third-party creditors.








In response to the trial court=s request for
supplemental briefing, U.S. Bank contended that, as alleged in its second
amended petition,[4]
it was assigned all of the claims of TransTexas, its shareholders and
creditors, and the Senior Secured Noteholders also owned all of the preferred
shares and a controlling percentage of the common stock of TransTexas and
elected the board of directors.  Thus, U.S. Bank argued, the policy underlying
the Gheewalla court=s refusal to recognize a direct
breach-of-fiduciary-duty claim by creditors did not exist in this case because
there was no conflict between shareholders and creditors.  Moreover, U.S. Bank
urged, Stanley=s and the directors= arguments
concerning damages were incorrect because the loss to the Noteholders was
equivalent to the diminution of TransTexas=s value. 

On May 21, 2008, the trial court signed a
final judgment in which it overruled Stanley=s objections Ato testimony@ by U.S. Bank=s experts Young
and Hellmold, granted Stanley=s and the directors= motions for
summary judgment, and ordered that U.S. Bank take nothing.[5] 
This appeal followed.[6]

II

As noted above, U.S. Bank raises three
issues on appeal: (1) the factual record supports its claim for the appellees= breaches of
fiduciary obligations, appellee John R. Stanley=s breach of an
employment agreement, and U.S. Bank=s entitlement to
damages; (2) the appellees= objections to U.S. Bank=s summary-judgment
evidence and expert testimony and opinions are without merit; and (3) the Gheewalla
doctrine does not apply or otherwise support summary judgment for appellees. 
Both U.S. Bank and the appellees agree that Delaware law governs the substantive
issues raised.  








We will first address U.S. Bank=s third issue to
explain that although Gheewalla disposes of any claims U.S. Bank may
purport to bring directly on behalf of creditors, it does not dispose of any
claims U.S. Bank allegedly asserts on behalf of TransTexas.  We will then turn
to U.S. Bank=s first issue, in which we explain that the trial
court did not err in granting summary judgment on U.S. Bank=s claims brought
on behalf of TransTexas because it presented no evidence of damages to
TransTexas.  Because of our disposition of these issues, we do not reach U.S.
Bank=s second issue.

A

Our review of summary judgments is de
novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  When the trial court grants the judgment without specifying the
grounds, we affirm the summary judgment if any of the grounds are meritorious. 
FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000). 
Here, the appellees moved for summary judgment on both traditional and
no-evidence grounds; thus, we apply the established standard of review
appropriate for each type of summary judgment, taking as true all evidence
favorable to the nonmovant, and indulging every reasonable inference and
resolving any doubts in the nonmovant=s favor.  See
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004)
(traditional summary judgment); King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003) (no-evidence summary judgment). 

B








In its third issue, U.S. Bank contends
that the Delaware Supreme Court=s opinion in Gheewalla does not
support the trial court=s grant of summary judgment. 
Specifically, in its appellate brief, U.S. Bank asserts that the case has no
relevance because U.S. Bank, as trustee, received an assignment of TransTexas=s claims, as well
as those of its creditors, and its second amended petition clearly asserts
claims on behalf of TransTexas.[7] 
Further, U.S. Bank points out that the Senior Secured Noteholders also owned
preferred and common shares of TransTexas and elected the board of directors,
making this case distinguishable on its facts from Gheewalla.

In Gheewalla, the court held that Athe creditors of a
Delaware corporation that is either insolvent or in the zone of insolvency have
no right, as a matter of law, to assert direct claims for breach of fiduciary
duty against the corporation=s directors.@  930 A.2d at 94. 
In so doing, the court resolved an issue that the appellees had raised below
but had not been conclusively determined when U.S. Bank first filed suit on
behalf of ATransTexas . . . and the holders of Senior Notes
issued by TransTexas.@  The Gheewalla court explained
that A>the general rule
is that directors do not owe creditors duties beyond the relevant contractual
terms.=@  Id. at 99
(citations omitted).  In reaching its conclusion, the court noted that ADelaware courts
have traditionally been reluctant to expand existing fiduciary duties.@  Id. The
court went on to explain that the creditors of an insolvent corporation do have
standing to maintain derivative claims against directors on behalf of the
corporation for breaches of fiduciary duties.  Id. at 101.  This is
because insolvency or near insolvency Amakes creditors
the principal constituency injured by any fiduciary breaches that diminish the
firm=s value.@  Id.  at
101B02.  Thus, equity
allows the creditors standing to pursue only derivative claims against
directors of an insolvent corporation.  Id. at 102.








Consequently, the Gheewalla court=s ruling bars any
direct claims of creditors U.S. Bank purports to bring on their behalf. 
Nevertheless, even after Gheewalla had issued and U.S. Bank was granted
leave to file its second amended petition, it continued to maintain that it was
bringing this lawsuit Ato recover substantial losses and damage
suffered by TransTexas . . . and the holders of Senior Notes issued by
TransTexas pursuant to that certain Indenture dated as of March 15, 2000 (the ASenior Notes@)@ (emphasis
added).  And as noted above, U.S. Bank represents that it has received as
assignment of the claims of both TransTexas and its creditors.  Although its
argument is unclear, U.S. Bank appears to attempt to distinguish GheewallaCand thereby
preserve the creditors= claims purportedly assigned to itCby arguing that
(1) the Gheewalla court ruled as it did because it recognized a
potential conflict of interest in allowing creditors to sue directors when
directors= obligations to shareholders and creditors may differ,
but (2) no such conflict exists under these facts because the Senior
Noteholders are also shareholders who elected the directors.  

We are not persuaded to extend Delaware
law as U.S. Bank suggests.  Indeed, Delaware law recognizes that the directors= obligations to a
corporation and its shareholders may at times put them at odds with the
creditors:

It is
the obligation of directors to attempt, within the law, to maximize the
long-run interests of the corporation=s stockholders;
that they may sometimes do so >at the expense= of others . . .
does not for that reason constitute a breach of duty.  It seems likely that
corporate restructurings designed to maximize shareholder values may in some
instances have the effect of requiring bondholders to bear greater risk of loss
and thus in effect transfer economic value from bondholders to stockholders. 

Katz v. Oak Indus., Inc., 508 A.2d 873, 879
(Del. Ch. 1986) (citations omitted); see Gheewalla, 930 A.2d at 103
(observing that allowing individual creditors to bring fiduciary claims
directly Awould create a conflict between [the] directors= duty to maximize
the value of the insolvent corporation for the benefit of all those having an
interest in it, and the newly recognized direct fiduciary duty to individual
creditors@).

Moreover, the Gheewalla court
emphasized that creditors are not left without remedies:  AWhile shareholders
rely on directors acting as fiduciaries to protect their interests, creditors
are afforded protection through contractual agreements, fraud and
fraudulent[-]conveyance law, implied covenants of good faith and fair dealing,
bankruptcy law, general commercial law and other sources of creditor rights.@  Gheewalla,
930 A.2d at 99 (citing Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863
A.2d 772, 790 (Del. Ch. 2004).  Thus, the court observed, all of these
protections Arender the imposition of an additional, unique layer
of protection through direct claims for breach of fiduciary duty unnecessary.@  Id. at
100.  








Therefore, assuming that U.S. Bank
purports to bring claims directly on behalf of creditors, Gheewalla
forecloses such claims.  And, in any event, at oral argument counsel for U.S.
Bank represented that it brought this lawsuit on behalf of TransTexas, not
TransTexas and its creditors.  Additionally, nowhere in its appellate brief
does U.S. Bank assert that it is bringing its claims derivatively on behalf of
the creditors or shareholders.  Indeed, U.S. Bank asserts in its brief that Ahere, it was
unnecessary to bring [TransTexas=s] claims
derivatively, since U.S. Bank owns those claims.@  Therefore, the
trial court did not err to the extent it granted summary judgment on any
direct-liability claims U.S. Bank brought on behalf of creditors. 
Nevertheless, to the extent U.S. Bank pursues claims on behalf of TransTexas,
such claims are unaffected by the Gheewalla decision.

C

Having determined that the Gheewalla
opinion does not foreclose U.S. Bank=s claims brought
on behalf of TransTexas, we next turn to U.S. Bank=s contention in
its third issue that, among other things, it produced evidence that the alleged
breaches of fiduciary obligations by Stanley and the directors caused damages
to TransTexas.  Both Stanley and the directors asserted in their motions for
no-evidence summary judgment that U.S. Bank had no evidence that TransTexas
suffered damages as a result of their conduct.  Accordingly, we must ascertain
whether U.S. Bank has pointed out summary-judgment evidence of probative force
to raise a genuine issue of fact as to the element of damages.  See Nguyen
v. Woodley, 273 S.W.3d 891, 897 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).








U.S. Bank claims that it has presented
sufficient evidence of damages.  Specifically, it points to (1) Hellmold=s report and sworn
testimony that Stanley=s excessive spending, approved by the
directors through action and inaction, caused TransTexas to suffer significant
losses and drove it into bankruptcy; (2) in a presentation to the board after
Stanley=s departure in
July 2002, TransTexas=s management advocated running the company
in a cost-effective manner, pointing out that the company had spent $225
million over the previous two years without any positive results; (3)
TransTexas estimated in its 2002 bankruptcy filings that its assets fell from
$262 million to at most $28 million between the first and second bankruptcies;
and (4) Young calculated that the Senior Preferred Shareholder=s Senior Notes
were devalued by about $183 million, which U.S. Bank contends reflects the Aloss in equity to
TransTexas.@  

Concerning the testimony and expert report
of U.S. Bank=s expert, Hellmold, we first note that U.S. Bank
designated him as an expert on liability only, and it does not represent that
he is designated to opine on damages.  Further, the excerpts of Hellmold=s testimony that
U.S. Bank relies on were omitted from the record.  Although U.S. Bank appended
to its brief a portion of Hellmold=s deposition
containing the excerpts, the appellees have objected that this court should not
consider documents outside the record.  We agree.  See Tex. R. App. P.
38.1(h); Worldpeace v. Comm=n for Lawyer
Discipline, 183 S.W.3d 451, 465 n.23 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied).  Therefore, we do not consider U.S. Bank=s references to
Hellmold=s deposition
testimony and opinions.

We turn next to U.S. Bank=s contention that
Hellmold=s expert report
also presents evidence of damages.[8] 
But, in this section of its brief, U.S. Bank makes only a fleeting reference to
the report.  It does not point out those parts of the sixty-three page report
on which it relies, but merely invites us to consider the report Aas noted above.@  It is thus
unclear exactly what part of the report U.S. Bank contends raises a fact issue
on damages. Nevertheless, we will review the report to determine whether it
supports U.S. Bank=s contention that Athe excessive
spending by Stanley and approved [by] the Outside Directors through action and
inaction caused [TransTexas to] suffer significant losses and drove
[TransTexas] into bankruptcy.@  








In its response to the appellees= no-evidence
motion and on appeal, U.S. Bank cites to those parts of Hellmold=s report in which
he states that Stanley repeatedly and significantly overspent the amounts the
board budgeted and that the directors pre-approved or ratified his actions.  At
the end of his report, Hellmold opines that despite numerous Ared flags,@ the directors Awere in total
support of the business strategy of >swinging for the
fences= in order to try
to pay off the Senior Preferred Stock and return control of [TransTexas] to
Stanley,@ and that this was
Ain direct
contravention of their fiduciary obligations to [TransTexas] and its creditors.@  Hellmold then
concludes, in a cursory fashion, that the directors= actions Aresulted in [TransTexas]
having extremely little value@ by the time of the 2002 bankruptcy
filing.  Hellmold does
not explain or discuss this alleged loss in value anywhere in his report, nor
does he provide a damages theory, model, or even a calculation of the alleged
loss in value.  As U.S. Bank=s liability
expert, Hellmold goes to great lengths in his report to describe what he
believes Stanley and the directors should and should not have done.  But
although the report sets forth a liability theory, it goes no further, and thus
fails to raise a genuine issue of material fact as to the element of damages.








Likewise, the representation in a
management presentation that the appellees authorized expenditures totaling
$225 million with Ano positive results@[9] and the evidence
of the reduction in TransTexas= assets between the two bankruptcies does
not raise a genuine issue as to damages.  Companies often spend money
that does not achieve positive results, and they may become insolvent as a
result.[10] 
The mere assertion that TransTexas, a company engaged in oil and gas
exploration effortsCan enterprise that inherently involves
certain risksCspent too much money and achieved too little resultsCdoes not equate to
a damages theory or model.  There can be no recovery for damages that are
speculative or conjectural.  Reardon v. Lightpath Techs., Inc., 183
S.W.3d 429, 442 (Tex. App.CHouston [14th Dist.] 2005, pet. denied); Fitzgerald
v. Antoine Nat=l Bank, 980 S.W.2d 228,
231 (Tex. App.CHouston [14th Dist.] 1998, no pet.).  

Nevertheless, U.S. Bank contends that
TransTexas=s losses are some evidence of damages because it reflects
a loss in Aenterprise value,@ and it contended
in its reply brief and at oral argument that no expert testimony is required to
connect these alleged damages to the appellees= allegedly
wrongful conduct.  But the only case U.S. Bank cites does not support its
position.  See BelCom, Inc. v. Robb, 1998 WL 229527 (Del. Ch. 1998).  In
BelCom v. Robb, the plaintiff offered an expert witness who
testified that BelCom=s enterprise value had been adversely
affected by the actions of Robb, a director and shareholder of BelCom, and that
no factors in the industry during the relevant time period could otherwise
account for the decline in BelCom=s value.  Id.
at *4.  Thus, the expert concluded that the decline could only reasonably be
attributed to Robb=s actions and he opined that Robb caused
millions of dollars in damages to the company.  Id. at *4B5.  U.S. Bank
offers no similar testimony here to connect TransTexas=s alleged losses
to the appellees= alleged actions.  Further, in its reply
brief, the only evidence U.S. Bank points to as raising an issue that appellees= alleged
wrongdoing caused TransTexas=s damages is Hellmond=s deposition
testimony that was excluded from the record and which we do not consider.








Finally, U.S. Bank asserts that its only
damages expert, Jon Young, presented evidence of TransTexas=s damages in the
form of Athe loss in equity@ to TransTexas. 
To support this contention, U.S. Bank apparently refers to a portion of the
following sentence in Young=s original report:  AThe differences in
equity interest values are estimated at 185.2 million, which is ultimately
TransTexas= loss between each bankruptcy proceeding.@[11]  But Young=s report reflects
that his company was engaged Ato determine an estimated amount of losses
relating to the Senior Note Creditors@ in TransTexas=s bankruptcy
proceedings, not to determine TransTexas=s damages.  His
calculation of the loss to the creditors largely consisted of subtracting the
value of the Senior Notes at the time of the second bankruptcy from their value
at the time of the first bankruptcy, resulting in a difference in value of over
$185.2 million.  In a supplemental report, Young slightly revised this
calculation, stating that Athe overall financial effect to Senior
Note holders as a result of TransTexas= July 2003
bankruptcy reorganization is a loss of $183.675 - $184.675 million.@  Thus, Young=s damages evidence
was limited to the damages allegedly suffered by TransTexas=s creditors, not
by TransTexas. 

U.S. Bank appears to contend that the loss
to the creditors approximates the loss to TransTexas and so presents evidence
of TransTexas=s damages.  But U.S. Bank does not present any
evidence to support this contention.  U.S. Bank also ignores its own position
in its briefing, in which it stated, AHere, plaintiff
has presented evidence of an injury specific to the Senior Noteholders and not
shared by the shareholders or any other groupCnamely the
approximately $184 million loss in the value of the Senior Notes between the
2000 and 2002 bankruptcies.@ 








Reviewing this evidence under the
applicable standard of review, we cannot reasonably infer from it that U.S.
Bank presented evidence of TransTexas=s damages; at
most, it offers mere speculation or conjecture that does not amount to more
than a scintilla of evidence to support U.S. Bank=s claims against
Stanley and the directors.[12] 
Therefore, we hold that the trial court did not err in granting the no-evidence
motions of Stanley and the directors on the grounds that U.S. Bank had no
evidence of damages to TransTexas, and we overrule U.S. Bank=s first issue on
that basis.

* * *

We affirm the trial court=s judgment.

 

 

 

/s/      Jeffrey
V. Brown

Justice

 

Panel consists of Justices Seymore, Brown and Sullivan.









[1]  N. Am. Catholic Educ. Programming Found., Inc. v.
Gheewalla, 930 A.2d 92 (Del. 2007).





[2]  Neither the 2000 plan nor the 2003 plan are in
evidence.  The information concerning the contents of the plans is drawn from
the representations in U.S. Bank=s
pleadings.





[3]  In its second amended petition, the live pleading
for purposes of this summary-judgment review, U.S. Bank asserted damages Ain an amount not exceeding $200,000,000.@





[4]  The trial court granted leave to U.S. Bank to amend
its petition after Gheewalla issued, and it is undisputed that, for
purposes of the summary-judgment review, U.S. Bank=s second amended petition is the live pleading. 





[5]  The record does not include any rulings on Stanley=s and the directors= objections to U.S. Bank=s summary-judgment evidence, which
were filed separately from Stanley=s motions to exclude the expert testimony and opinions of
Hellmold and Young.  Moreover, the statement in the trial court=s order that AAll relief not granted herein is DENIED@
does not constitute a ruling overruling those objections.  See Chapman
Children=s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 436 n.4 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).





[6]  U.S. Bank=s
notice of appeal appears to attempt to add additional defendants, namely AJohn Does I-X.@ 
But these purported defendants do not appear in the record below in the
pleadings or the final judgment.  Moreover, U.S. Bank makes no reference to
them.  We disregard U.S. Bank=s apparent
attempt to add additional defendants on appeal.





[7]  Again, there is no evidence of any assignments of
claims by creditors or shareholders in the record; we have only U.S. Bank=s representations in its pleadings. 





[8]  Although the appellees objected below and on appeal
that Hellmold=s expert report was inadmissible hearsay, as noted
above, the appellees did not obtain a ruling on that objection; therefore, this
objection is not preserved for our review.  See Tex. R. App. P. 33.1(a);
Chapman Children=s Trust, 32
S.W.2d at 436 n.4 (noting that Amother hubbard
clause@ in final judgment did not effectively overrule
objections to affidavit and therefore hearsay objections were not preserved for
review).  Therefore, the report remains a part of the summary-judgment
evidence.  See Wright v. Greenberg, 2 S.W.3d 666, 676 (Tex. App.CHouston [14th Dist.] 1999, pet. denied).





[9]  U.S. Bank does not direct us to the specific page of
the presentation referenced, but we presume it is referring to a page entitled AChange of Operating Philosophy@ in which it describes the old ASwing for the Fences@ philosophy as resulting in, among other things, AProved Reserves Dropped Despite 2-Year Capital Expenditures
of $225 Million.@





[10]  We note that Delaware courts recognize that when the board of an
insolvent corporation pursues in good faith a strategy that will increase the
corporation=s value but also involves the
incurrence of additional debt, Ait does not become a guarantor of that strategy=s success.@  Trenwick Am. Litig. Trust v.
Ernst & Young, L.L.P., 906 A.2d 168, 205 (Del. Ch. 2006)  Rather, Ain such a scenario the directors
are protected by the business-judgment rule.  To conclude otherwise would
fundamentally transform Delaware law.@  Id. 
Delaware law also acknowledges that A[d]irectors
are expected to seek profit for stockholders, even at risk of failure.  With
the prospect of profit often comes the potential for defeat.@  Id. at 174.  





[11]  U.S. Bank also attached a supplemental report in
which Young=s calculation of the loss to Senior Note Creditors was
revised downward slightly, from $185.2 million to between $183.675 - $184.675
million.  As in the original report, the supplemental report reflected that the
purpose of Young=s engagement was to Adetermine the estimated amount of loss related to the Senior Note
Creditors in TransTexas= bankruptcy proceedings.@





[12]  U.S. Bank contends that Stanley did not assert a
no-evidence issue as to his breach-of-contract claim.  We disagree.  In that
portion of Stanley=s no-evidence motion on damages, he asserted that AU.S. Bank can offer no evidence . . . that TransTexas
suffered any damages as a result of Stanley=s allegedly wrongful conduct@ and Aall of the claims U.S. Bank asserts in TransTexas= name fail because U.S. Bank has no proof of damages
to the company itself or to its shareholders@
(emphasis added).  Therefore, contrary to U.S. Bank=s contention, Stanley argued that U.S. Bank had no
evidence of damages to support both its breach-of-fiduciary-duty claim and its
breach-of-contract claim against Stanley.